**IN THE COURT OF APPEALS OF IOWA**

No. 23-1968
Filed February 7, 2024

**IN THE INTEREST OF A.B., D.B., and J.B.,**
**Minor Children,**

**C.K., Mother,**
     Appellant.
_____

Appeal from the Iowa District Court for Clinton County, Kimberly K. Shepherd, District Associate Judge.

A mother appeals the termination of her parental rights to her three children. **AFFIRMED.**

Victoria D. Noel of The Noel Law Firm, P.C., Clinton, for appellant mother.

Brenna Bird, Attorney General, and Dion D. Trowers, Assistant Attorney General, for appellee State.

Jennifer M. Olsen, Davenport, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Greer and Chicchelly, JJ.

**GREER, Judge.**

The mother appeals the termination of her parental rights to her three children: J.B, born in May 2014; A.B., born in April 2016; and D.B., born in July 2017.[1] She asserts that the State failed to prove a ground for termination by clear and convincing evidence and that the juvenile court should have relied on the permissive exception to order a guardianship instead of termination. We affirm.

**I. Background Facts and Prior Proceedings.**

The family first came to the attention of the Iowa Department of Health and Human Services (the department) in March 2017 due to concerns about supervision, domestic violence between the mother and the father, and methamphetamine and marijuana use in the home. Involvement by the department resulted in six founded child abuse assessments between 2017 and 2022 for dangerous substances; presence of illegal drug in a child; denial of critical care, failure to provide proper supervision; and denial of critical care, failure to provide adequate shelter. There was also a no-contact order put in place between the mother and the father.

The State filed a child-in-need-of-assistance (CINA) petition in January 2022. Following a hearing, the juvenile court adjudicated all three children CINA in March pursuant to Iowa Code section 232.2(6)(b), (c)(2), (n), and .(p) (2022). Then, the month after a dispositional hearing in May, the mother tested positive for methamphetamine and amphetamine, and the children were removed from the home and placed in the custody of the department via an ex parte removal order.

---

[1] The father 's parental rights were also terminated; he is not a party to this appeal.

The department placed them in the care of a paternal uncle and his partner; the children have remained in their care since that time. The mother had supervised visits with the children.

The most recent child abuse assessment was completed in July 2022 based on allegations that the home was full of trash, dirty clothes, and spoiled food, which led to infestations of lice, roaches, and bed bugs and resulted in a founded assessment for denial of critical care, failure to provide adequate shelter. The child protection worker that performed the assessment determined that it was difficult to move about the home due to its state and that it would be difficult to get out of the home in an emergency. The mother also returned positive tests for methamphetamine, marijuana, and amphetamine in August and for marijuana in November. The State petitioned to terminate the mother's parental rights to all three children pursuant to Iowa Code section 232.116(1) (a), (b), (d), (e), (f), (i), (k), and (*l*) (2023) in October 2023.

The juvenile court held a combined termination-of-parental-rights and permanency-review hearing in November. At the time of this hearing, the children had been removed from the mother's care for sixteen months and were ages nine, seven, and six years old. Both a social work case manager and the mother testified at the hearing. The case manager testified that she did not believe that the children could be returned to the mother's care because she had concerns about the mother's alcohol abuse—the mother had come to some supervised visits and was observed to be under the influence of alcohol—plus, she had not completed a mental-health screening. The case manager also stated that, at the time of the hearing, there was no heat or running water in the mother's home and the children

had concerns about inadequate food there; the mother had broken her arm and could not work because of it. In addition, the mother's visits had never progressed beyond fully supervised. However, the case manager observed a bond between the mother and the children and that they loved and showed affection towards her. To the mother's credit, the case manager confirmed the mother made progress by no longer using methamphetamine.

The mother testified that while there was no heat or running water in the apartment, there was electricity; she had not been able to pay the utility bills because she was not working. She admitted that she had issues with people breaking into her home and that some of the people who came to the home might not be safe to be around the children, including "two domestically violent males." For reasons related to her employment and the lack of heat in the home, she agreed that the children probably could not be returned to her custody that day. She also stated that she was not attending therapy or mental-health treatment because she was waiting to see what would happen with the termination proceedings but that she had scheduled an intake. The mother began substance-abuse treatment in January 2023 but had not completed it at the time of the hearing. However, she testified that she was learning self-awareness and the importance of support in maintaining sobriety and admitted that she has tested positive for alcohol in the past. The juvenile court admitted an unpaid sewer bill and water bill as exhibits; the sewer bill had a balance of $644.02 and the water bill had a balance of $181.84. The juvenile court also admitted a police report alleging a felony theft committed in the mother's home.

The juvenile court terminated the mother's parental rights pursuant to section 232.116(1)(d), (e), (f), and (*l*) in November 2023. The mother appeals.

## II. Standard of Review.

We review the termination of parental rights de novo. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). We give careful consideration to the juvenile court's factual findings and in-person observations, but we are not bound by them. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). "[O]ur fundamental concern" in review of termination proceedings "is the child[ren]'s best interests." *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).

## III. Analysis.

In general, we follow a three-step analysis in reviewing the termination of a parent's rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We first consider whether there is a statutory ground for termination of the parent's rights under section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the children's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.* Here, because the mother only challenges the statutory grounds for termination and whether the juvenile court should have relied on the permissive exception to avoid termination and instead ordered a guardianship, we only address those issues. *See id.* at 40.[2]

---

[2] The mother did not appeal her request for six additional months to work towards reunification. *See* Iowa Code § 232.104(2)(b).

**A. Grounds for Termination.**

The mother challenges all four of the grounds that the juvenile court relied on to terminate her parental rights. "When the juvenile court terminates parental rights on more than one statutory ground," we may affirm "on any ground we find supported by the record" evidence. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). "There must be clear and convincing evidence of the grounds for termination of parental rights." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We choose to review termination under paragraph (f).[3] Here, the mother only challenges the fourth element of that paragraph—whether the State presented clear and convincing evidence that the children could not be returned to her custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4); *In re K.D.*, No. 16-1778, 2017 WL 108586, at *1 (Iowa Ct. App. Jan. 11, 2017) ("'At the present time' refers to the time of the termination hearing.").

At the time of the termination hearing, the mother did not have an income from employment, was unable to pay her water bill so that service was disconnected, and there was no heat in the home because of an issue with the heating system. The mother acknowledged at the termination hearing that the

---

[3] Under paragraph (f), the juvenile court may terminate a parent's rights when
> (1) The child is four years of age or older.
> (2) The child has been adjudicated [CINA].
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).

children could not be returned to her custody that day. We agree that the lack of heat and running water in the home would have made the children's return to the mother's care unsafe. *See In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997) (affirming the termination of parental rights where in the father's home "[t]he water and electricity were shut off"); *In re K.S.*, No. 20-1221, 2020 WL 7022401 at *3 (Iowa Ct. App. Nov. 30, 2020) (affirming termination of parental rights where the mother's home "had no running water, 'toilets were flushed with the use of a large jug of water,' and the only heat available was due to numerous space heaters"); *In re C.D.*, No. 02-0030, 2002 WL 1842933, at *1 (Iowa Ct. App. Aug. 14, 2002) (affirming the termination of parental rights where the mother was living in a farmhouse without furnace heat).

But beyond the housing situation, the mother never progressed beyond supervised visits with the children. *See In re C.N.*, No. 19-1861, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020) ("[The mother] never progressed to unsupervised visits or trial home visits. Without this necessary progression, we cannot say the children could have returned to the mother's care."). The department did not allow semi-supervised or unsupervised visits in part because of the state of the mother's home and because of concerns about the safety of the children there. "We look to the past for indicators of what is likely to occur in the future." *In re M.P.*, No. 19-0995, 2019 WL 5063337, at *5 (Iowa Ct. App. Oct. 9, 2019); *see also In re J.E.,* 723 N.W.2d 793, 798 (Iowa 2006) ("When making this decision, we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future."). Another barrier to progress were the mother's substance-abuse issues and lack of progress with

mental-health concerns. Although she testified she was addressing these issues, the case manager provided examples of observed behavior that suggested the mother still struggled. The mother could not name her sobriety date and had not engaged in active mental-health services because she "was waiting to see how this would go." Therefore, we factor in the mother's inability to progress related to these specific concerns. Because the children could not be safely returned to the mother's home and custody, the statutory ground for termination was met under paragraph (f).

**B. Permissive Exception and Request for Guardianship.**

Next, the mother argues that the children are old enough to know who she is and state their affection for her. For that reason, she argues, it would have been in their best interests to order a guardianship rather than terminate her parental rights. In this way, she wraps together an argument for the permissive exception and a request for a guardianship. "The court need not terminate the relationship between the parent and child if the court finds . . . [t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). In addition, the juvenile court may, after a termination hearing, establish a guardianship instead of ordering termination. *See id.* § 232.117(5) (allowing the court to enter an order in accordance with several sections, including section 232.104); *see also id.* § 232.104(2)(d)(2) (allowing the court to enter an order transferring guardianship and custody of the children to an adult relative).

However, "the existence of a bond is not enough. The law requires clear and convincing evidence that 'termination would be detrimental to the

child[ren] . . . .'" *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (quoting Iowa Code § 232.116(3)(c)). More specifically, the mother has the burden to prove that termination would be detrimental to the children due to the closeness of their parent-child relationship. *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010); *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (providing the parent has the burden to establish a permissive exception to termination should be applied. Here, although the mother has offered evidence of a bond between herself and the children, she has not demonstrated that the strength of the bond would make termination of her rights to the children detrimental to them. Nor has she shown that such a strong bond would overcome her lack of an appropriate home for them to return to or her inability to progress to semi-supervised or unsupervised visits in the home.

And as we have often stated, "a guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). When the statutory requirements for termination are met, we are not required to order a guardianship in lieu of termination. *In re N.M.*, No. 17-0054, 2017 WL 1088119, at *3 (Iowa Ct. App. Mar. 22, 2017); *In re S.C.*, No. 15-1912, 2016 WL 903029, at *4 (Iowa Ct. App. Mar. 9, 2016); *In re K.B.*, No. 15-1685, 2016 WL 146707, *4 (Iowa Ct. App. Jan. 13, 2016). Although the children's uncle and his partner have cared for the children since their removal from the mother's home, "[a]n appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child." *C.K.*, 558 N.W.2d at 174. We decline to rely on the permissive exception to order a guardianship rather than terminate the mother's parental rights.

**IV. Conclusion.**

Because after our de novo review of the record we find that the children could not be returned to the mother's custody at the time of the termination hearing and reliance on the permissive exception or a guardianship to avoid termination is unwarranted, we affirm the termination of the mother's parental rights.

**AFFIRMED.**